| | | |
|---|---|---|
| STATE OF SOUTH DAKOTA | ) | IN CIRCUIT COURT |
| | : SS | |
| COUNTY OF MINNEHAHA | ) | SECOND JUDICIAL CIRCUIT |

| | |
|---|---|
| BARB ANNE NYREEN, | |
| Plaintiff, | **SUMMONS** |
| v. | |
| POET, L.L.C., | |
| Defendant. | |

**THE STATE OF SOUTH DAKOTA TO THE ABOVE-NAMED DEFENDANT:**

**YOU ARE HEREBY SUMMONED** and required to serve upon David J. King of King Law Firm, Attorney for the Plaintiffs, whose address is 141 N Main Ave, Suite 700, Sioux Falls, SD, 57104, an Answer to the Complaint which is herewith served upon you within thirty (30) days after the service of this Summons upon you, exclusive of the day of service. In the event of your failure to Answer the said Complaint within that time, Judgment by Default will be taken against you for the relief demanded in the Complaint after the expiration of at least thirty (30) days from the completed service of this Summons and Complaint upon you.

Dated at Sioux Falls, Minnehaha County, South Dakota, this _10_ day of _August_, 2018.

David J. King
*Attorney for Plaintiff*
King Law Firm
141 N Main Ave, Ste 700
Sioux Falls, SD 57104
Phone (605)332-4000

# EXHIBIT A

| | | |
|---|---|---|
| STATE OF SOUTH DAKOTA | ) : SS | IN CIRCUIT COURT |
| COUNTY OF MINNEHAHA | ) | SECOND JUDICIAL COURT |

| | |
|---|---|
| BARB ANNE NYREEN,<br><br>              Plaintiff,<br>v.<br><br>POET, L.L.C.,<br><br>              Defendant. | **COMPLAINT AND JURY DEMAND** |

**COMES NOW**, Plaintiff Barb Nyreen by and through her attorney, David J. King of King Law Firm P.C., 141 N. Main Avenue Suite 700, Sioux Falls, SD 57104 and for her Complaint against POET L.L.C. does hereby state and plead as follows:

## COMPLAINT AND JURY DEMAND

1. There is no other civil action between these parties arising out of the same transaction or occurrence as alleged in this Complaint pending in this Court, nor has any such action been previously filed and dismissed or transferred after having been assigned to a Judge.

2. This Honorable Court has jurisdiction over this action pursuant to South Dakota Constitution Article § 5 and SDCL § 16-6-9.

3. Plaintiff Barb Nyreen herewith requests that this matter be heard by a jury of her peers.

## JURISDICTION AND VENUE

4. Barb Nyreen brings Count I of this action under the *Age Discrimination in Employment Act of 1967* (ADEA) which protects individuals who are over age 40 from employment discrimination based upon age.

5. Barb Nyreen filed a Charge of Discrimination alleging Age Discrimination with the City of Sioux Falls on November 15, 2017. (See, attached exhibit "A").

6. On November 21, 2017, Nyreen filed a Charge of Discrimination with The U.S. Equal Employment Opportunity Commission (Minneapolis Area Office). (See, attached exhibit "B").

7. It is charge number 444-2018-00011.

8. Nyreen has received a "Right to Sue" letter. (See, attached exhibit "C").

9. Nyreen has exhausted all administrative procedures prerequisite to bringing this case. (See, attached exhibit "C").

10. Venue is appropriate in this judicial district because the events that gave rise to this Complaint occurred in this district.

## PARTIES

11. Barb Nyreen is an adult citizen of the United States who resides in Sioux Falls, Minnehaha County, State of South Dakota, which is in this judicial district.

12. Defendant POET, L.L.C. is the largest company in South Dakota. It is one of the largest producers of ethanol, feed solutions, and other oil replacement products in the world.

## FACTS

13. Nyreen is a 60-year-old woman. Her date of birth is ███████████.

14. Nyreen's qualifications include having her PhD, PHR and is SHRM-CP certified.

15. Nyreen was an employee of the Defendant, POET, L.L.C. since September 15, 2011.

16. POET, L.L.C. had an employee handbook which, among other things provided:

> "In order to provide equal employment and advancement opportunities to all individuals, employment decisions at POET, LLC will be based on merit, qualifications and abilities. POET, LLC does not discriminate in employment opportunities or practices on the basis of race, color, religion, sex, national origin, age, pregnancy, disability or any other characteristic protected by law."

17. Barb Nyreen was employed in the Human Resources Department. She was a "CARE TEAM MEMBER". Her job description is attached as Exhibit D.

18. Nyreen had a high-status employment position as a *Care Business Partner* with POET, L.L.C. It was a high paying job.

19. Nyreen received numerous good employment reviews. She also received multiple bonuses for doing good work.

20. On August 2, 2017, Cheryl Kappenman, who was the *Director of Human Resources* at POET, L.L.C., asked to meet Nyreen <u>at a Perkins restaurant</u>. During that unusual meeting Cheryl told Barb that she had "outgrown her position". Kappenman asked Nyreen to resign her position with POET, L.L.C.

21. On August 8, 2017, under pressure, Nyreen was forced to send a letter to Cheryl Kappenman resigning her posting with POET, L.L.C.

22. On August 9, 2017, under pressure, Nyreen was forced to resign her position by sending an e-mail. (<u>See</u>, attached Exhibit E).

23. On August 15, 2017 POET, L.L.C. presented Nyreen a *Separation Agreement* and *General Release*. That proposed release, among other things, would have relieved POET, L.L.C. from any claims Barb Nyreen had under the Age Discrimination in Employment Act. (<u>See</u>, attached Exhibit F).  Nyreen refused to sign the proposed *Separation Agreement*.

24. Nyreen was constructively discharged as described above, at least in part because of her age, in violation of 29 U.S.C. § 623(a).

25. Nyreen's position with POET, L.L.C. was replaced by a younger, less qualified candidate.

26. Nyreen has done an exhaustive job search.

27. Nyreen is now employed by the South Dakota Department of Labor and Regulation as an Employment Specialist. She makes $16.30 per hour working 40 hours per week.

28. Nyreen has had to seek counseling through *Sanford Health Psychiatry and Psychology Clinic* with Rebecca Palugyay, MSW. Dr. Brooks, Nyreen's primary care physician, has been prescribed strong anti-depressant and anti-anxiety medication in order to deal with POET, L.L.C.'s discriminatory actions.

## COUNT I

## AGE DISCRIMINATION

29. Plaintiff incorporations and restates each of the above paragraphs as if though fully set forth herein.

30. The Defendant, *POET, L.L.C.* intentionally discriminated against Barb Nyreen based upon her age.

31. *POET, L.L.C.* harassed the Plaintiff in an effort to secure her involuntary resignation.

32. *POET, L.L.C.* discharged Plaintiff upon a pretextual ground of inept job performance.

33. As a direct and proximate cause of *POET, L.L.C.'s* discriminatory conduct as described herein, based upon age, Nyreen has been damaged.

34. Without being forced into resigning and being constructively terminated, Barb Nyreen would have continued her employment with *POET, L.L.C.* until at least age 75.

## COUNT II

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

35. Plaintiff incorporates paragraphs One (1) through Thirty-four (34) herein as though fully set forth herein.

36. POET, L.L.C.'s conduct as alleged herein was neglect.

37. Nyreen suffered emotional distress as a result of POET's conduct.

38. Nyreen has suffered physical manifestations of the emotional distress including but not limited to nausea, trembling hands, stomach issues, diarrhea, loss of appetite, weight loss, trouble sleeping and feeling faint.

## COUNT III

### DEFAMATION/SLANDER

39. Plaintiff Nyreen incorporates paragraphs one (1) through thirty-eight (38) above.

40. *POET, L.L.C.* has defamed and slandered Barb Nyreen by speaking/writing and circulating malicious, untrue and damaging comments about her job performance.

41. As a result of these actions, Plaintiff Nyreen was damaged.

**WHEREFORE,** Plaintiff requests that this Court enter judgement against Defendant and provide the following relief:

1. Compensatory damages.

2. Liquidated damages.

3. Back pay, front pay, fringe benefit and prejudgment interest.

4. Punitive/exemplary damages against Defendant in whatever amount, exclusive of costs and interest, that Plaintiff is found to be entitled.

5. An order placing Plaintiff in the position that she would have been in had there

been no discriminatory violation of her rights.

6. For recovery of her disbursements.

7. An award of interest, costs, expert witness fees, and reasonable attorney's fees, pursuant to 42 U.S.C. § 2000(e)-5(k), 29 U.S.C. § 2617(a)(3), and 42 U.S.C. § 12205.

8. Any and all other remedies provided pursuant to *The Age Discrimination in Employment Act*.

9. Such other and further relief as the Court deems appropriate.

Date this ___ day of August, 2018.

KING LAW FIRM, P.C.

David J. King
*Attorney for Claimant*
141 N. Main Ave, Ste 700
Sioux Falls, SD 57104
(605) 332-4000 phone
(605) 334-5797 fax
david@davidkinglawfirm.com

## JURY DEMAND

Plaintiff herewith request that this matter be heard before a jury of her peers pursuant to S.D.C.L. §15-6-38(b).

# Exhibit A

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act
Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 444-2018-00011 |

**Sioux Falls Human Relations Commission** and EEOC

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)*<br>**Ms. Barb A. Nyreen** | Home Phone *(incl. Area Code)*<br>**(712) 259-9992** | Date of Birth<br>■■■■ |
|---|---|---|

Street Address<br>**3713 E Steeple Street, Sioux Falls, SD 57103**     City, State and ZIP Code

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe
Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name<br>**POET, LLC** | No. Employees, Members<br>**Unknown** | Phone No. *(Include Area Code)*<br>**(605) 965-2200** |
|---|---|---|

Street Address<br>**4615 N Lewis Ave, Sioux Falls, SD 57104**     City, State and ZIP Code

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|

Street Address     City, State and ZIP Code

**DISCRIMINATION BASED ON** *(Check appropriate box(es).)*

☐ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN
☐ RETALIATION ☒ AGE ☐ DISABILITY ☐ GENETIC INFORMATION
☐ OTHER *(Specify)*

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| **04-01-2017** | **08-18-2017** |

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I. I have been an employee of the above-named Respondent since 2011. On or about August 2, 2017,
without warning, I was informed that I must resign my position within 30 days. I was told the position would
be refilled. I resigned effective August 18, 2017.

II. Reason given for Respondent's actions: I had outgrown my position and a performance improvement
plan would not correct the problem, although specific problems were not identified.

III. I believe that I have been discriminated against because of my age, 59, in violation of the Age
Discrimination in Employment Act of 1967, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| 11/15/2017    *Barb Nly*<br>Date     Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>*(month, day, year)*    DAVID J. KING<br>Notary Public Seal<br>South Dakota |



EXHIBIT A

# Exhibit B



## U.S. Equal Employment Opportunity Commission
### Minneapolis Area Office

Equal Employment Opportunity Commission
330 S 2nd Avenue, Suite 720
Minneapolis, MN 55401
(612) 335-4040
TDD: 1-800-669-6820
Fax: (612) 335-4044
1-800-669-4000

Respondent: POET LLC
EEOC Charge No.: 444-2018-00011
FEPA Charge No.:                                                                 November 21, 2017

David J. King
KING LAW FIRM, P.C.
141 N Main Avenue
Suite 700
Sioux Falls, SD 57104

Dear King:

This is to acknowledge receipt of the above-numbered charge of employment discrimination against the above-named respondent. Please use the "EEOC Charge No." listed above whenever you call us about this charge. The information provided indicates that the charge is subject to:

| [ ]  | Title VII of the Civil Rights Act of 1964 (Title VII) |
| [X]  | The Age Discrimination in Employment Act (ADEA) |
| [ ]  | The Americans with Disabilities Act (ADA) |
| [ ]  | The Equal Pay Act (EPA) |
| [ ]  | The Genetic Information Nondiscrimination Act (GINA) |

You need do nothing further at this time. We will contact you when we need more information or assistance. A copy of the charge or notice of the charge will be sent to the respondent within 10 days of our receipt of the charge as required by our procedures.

Please be aware that we will send a copy of the charge to Sioux Falls Human Relations Commission 224 West 9th Street Sioux Falls, SD 57104  as required by our procedures. If the charge is processed by that agency, it may require the charge to be signed before a notary public or an agency official. Then the agency will investigate and resolve the charge under their statute. If this occurs, section 1601.76 of EEOC's regulations entitles you to ask us to perform a Substantial Weight Review of the agency's final finding. To obtain this review, a written request must be made to this office within 15 days of receipt of the agency's final finding in the case. Otherwise, we will generally adopt the agency's finding as EEOC's.

The quickest and most convenient way to obtain the contact information and the status of your charge is to use EEOC's Online Charge Status System, which is available 24/7. You can access the system via this link (https://publicportal.eeoc.gov/portal) or by selecting the "My Charge Status" button on EEOC's Homepage (www.eeoc.gov). To sign in, enter your EEOC charge number, your zip code and the security response. An informational brochure is enclosed that provides more information about this system and its features.

While the charge is pending, this office should be notified of any change in your client's address, or where they can be reached if they have any prolonged absence from home. Your cooperation in this matter is essential.

Sincerely,

*DRN for*

Karen S. Seymour
Office Automation Asst
(612) 335-4050

Enclosure(s):          cc: Barb A. Nyreen
                       3713 E Steeple Street
                       Sioux Falls, SD 57103



EXHIBIT
B

# Exhibit C

EEOC Form 161-B (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Barb A. Nyreen<br>3713 E Steeple Street<br>Sioux Falls, SD 57103 | From:- | Minneapolis Area Office<br>Equal Employment Opportunity Commission<br>330 S 2nd Avenue, Suite 720<br>Minneapolis, MN 55401 |
|---|---|---|---|

| ☐ | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) |
|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 444-2018-00011 | David R. Noyes,<br>Investigator Support Asst | (612) 335-4057 |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

| ☐ | More than 180 days have passed since the filing of this charge. |
|---|---|
| ☐ | Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge. |
| ☐ | The EEOC is terminating its processing of this charge. |
| ☐ | The EEOC will continue to process this charge. |

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applies to your case:

| ☒ | The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost. |
|---|---|
| ☐ | The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time. |

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Julianne Bowman*

Julianne Bowman,
District Director

July 3, 2018
*(Date Mailed)*

Enclosures(s)

cc: | Tim Shattuck<br>Woods, Fuller, Shultz & Smith, P.C.<br>300 S. Phillips Avenue,<br>Suite 300<br>Sioux Falls, SD 57104<br>(Respondent Legal Representative) | David J. King<br>KING LAW FIRM, P.C.<br>141 N Main Avenue<br>Suite 700<br>Sioux Falls, SD 57104<br>(CP Legal Representative) |

EXHIBIT
C

Enclosure with EEOC
Form 161-B (11/16)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS   --   Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice.  Therefore, you should **keep a record of this date.**  Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost.  If you intend to consult an attorney, you should do so promptly.  Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it.  Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *mailed* **to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction.  (Usually, the appropriate State court is the general civil trial court.)  Whether you file in Federal or State court is a matter for you to decide after talking to your attorney.  Filing this Notice is not enough.  You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief.  Courts often require that a copy of your charge must be attached to the complaint you file in court.  If so, you should remove your birth date from the charge.  Some courts will not accept your complaint where the charge includes a date of birth.  Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge.  Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office.  If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS   --   Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.  For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit **before 7/1/10** – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008.  This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.  Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION   --   Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer.  Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney).  Requests should be made well before the end of the 90-day period mentioned above, because such requests do **not** relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE   --   All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case.  If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice).  While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case.  Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice.**  (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

# Exhibit D



# CARE Business Partner
# (Human Resources)

**Department: POET LLC CARE**
**FLSA Status: Exempt**

## SUMMARY

POET is a very unique company. We aim every day to be world class in all that we do. Taking care of and supporting our team members is no exception. That's why we renamed the Human Resources team to the CARE Team. CARE stands for Culture, Attitude and Achievement, Rewards and Recognition, and Engagement.

The CARE Business Partner will help support many of the strategies and initiatives associated with all areas that typically fall under the Human Resources responsibility including a strong emphasis on our PEOPLE strategy. As an integral part of the CARE Team, this position will provide operational and strategic input to various business leaders across the POET Enterprise and will be viewed as a valued team member with unquestionable character and integrity. This position will report to the Director, CARE Business Partner and will assist in driving the importance of people at POET.

## ESSENTIAL FUNCTIONS

1. Foster POET's company culture and provides creative measurements and feedback to the leaders of POET to promote and ensure the desired culture exists across the enterprise
2. Lead by example in upholding the highest level of integrity and confidentiality in the organization
3. Formulate partnerships with business leaders to support the business needs to include:  team member development and people strategies and initiatives
4. Proactively review compensation analysis for assigned business functions and make recommendations where appropriate
5. Partner with business leaders on highly effective recruitment and retention strategies
6. Participate in the recruitment process as needed in accordance with  POET's Standard Operating Procedures
7. Prepare and provide team member related KPI's and benchmarks to the various business leaders
8. Develop meaningful cross-functional relationships with leaders and team members that enable you to influence and shape the business objectives of the organization
9. Understand the organization's current and desired future state, gaps and priorities to support the business goals
10. Collaborate with the Development and Growth learning team to enhance leadership capabilities and implement change, development, and culture initiatives
11. Regularly provide risk assessments to business leaders
12. Assist in managing company policies that pertain to team members and make recommendations to enhance policies to either comply with laws or that further promote the desired POET culture
13. Stay current on all pertinent federal, state, and case law changes and monitors labor law updates for changes that may affect POET
14. In conjunction with business leaders, visit plants and partner with General Managers on team member engagement initiatives
15. Conduct investigations of team member complaints or concerns brought forth. Protect the interest of team members and the company in accordance with company policies and governmental laws and regulations
16. Assist with team member communication and feedback through such avenues as company meetings, suggestion programs, and team member engagement surveys, and one-on-one meetings
17. Conduct exit interviews. Create and provide trend data reporting to business leaders
18. May provide benefits administration service and assist team members with any claim issues (Leaves of Absence/Worker's Compensation/Bereavement, etc…)
19. May provide assistance as it relates to unemployment claims/processes/appeals
20. Work in an honest and ethical manner; maintain confidentiality on all business related matters
21. Complete work in a timely, accurate and thorough manner
22. Champion POET in the communities we do business in
23. Provide a high level of customer service and friendly atmosphere
24. Others duties as assigned

Reviewed: 7-2016



## EDUCATION & EXPERIENCE REQUIREMENTS/COMPETENCIES

To perform the essential functions of this position successfully, an individual should possess the following:

- Bachelor's Degree required; preferably in the area of Human Resources Management, Psychology, or Business
- 6+ years of progressive leadership; preferably in Human Resources positions is required
- Specialized training in employment law, compensation, organizational and strategic planning, organizational development, employee relations, training, and labor relations preferred
- Professional in Human Resources (PHR) or SHRM Certified Professional (SHRM-CP) certification preferred
- Experience in the administration of benefits and compensation programs and other Human Resources programs
- Ability to analyze and assess training and development needs
- Highly organized and ability to present facts and recommendations effectively in oral and/or written form
- Facilitation and training experience with large and small group meetings
- Evidence of the practice of a high level of confidentiality
- Research and analyze various types of data information
- Knowledge of federal, state, and local employment, wage and salary laws and regulation
- Ability to interpret and advise on the application of EEO/AA laws
- Knowledge of HRIS used in HR applications
- Ability to make recommendations to effectively resolve problems or issues by using judgment that is consistent with standards, practices, policies, procedures, regulation, or governmental law is a requirement
- Knowledge in Word, Excel, PowerPoint and Outlook and the ability and willingness to learn new software applications
- Excellent organizational skills, communications skills, the ability to multi-task, and most importantly, the ability to work well in a team

## WORK ENVIRONMENT/PHYSICAL REQUIREMENTS

This position is largely self-directed and requires understanding of company policy, procedures, and values. Team members will be required to adhere to all safety requirements in all work environments. This position operates in an office environment. In the office, the team member will work on a personal computer.

Travel, with some overnight stays, is required, up to 25%.

Specific physical requirements include:
   a. Sitting approximately 90% of the time while working on a personal computer.
   b. Occasional lifting of fifty (50) pounds or less.

Reviewed: 7-2016

# Exhibit E

Barb Nyreen
3713 E Steeple St.
Sioux Falls, SD 57103

August 8, 2017

Cheryl Kappenman
Director, CARE Business Partner
POET LLC
Sioux Falls, SD 57104

Dear Cheryl,

I would like to inform you that I am resigning from my position as CARE Business Partner with POET.

My last day with POET will be Friday, September 8, 2017. My main goal is to wrap up outstanding projects and if there is anything I can do to help smooth the transition responsibilities, please let me know.

Sincerely,

Barb Nyreen



EXHIBIT

E

# Exhibit F



## SEPARATION AGREEMENT AND GENERAL RELEASE

This Separation Agreement and General Release ("Agreement") is entered into by and between Barbara Nyreen ("Employee") and POET, LLC ("Company") (collectively, the "Parties").

WHEREAS, Employee and Company desire to enter into an agreement regarding Employee's separation of employment from Company and a release of claims; and

WHEREAS, Company desires to provide separation benefits to Employee as set forth below;

NOW THEREFORE, in consideration of the mutual promises, waivers and releases contained herein and for other good and valuable consideration, the sufficiency of which is hereby acknowledged, the Parties agree as follows:

     1.    Separation from Employment. Employee acknowledges and understands that Employee is resigning Employee's employment effective at the close of business on September 8, 2017 (the "Separation Date"). Employee further acknowledges and understands that Employee's last day in the office will be August 18, 2017, after which date Employee will not perform any more work-related job duties.

     2.    Payment. Subject to the terms of this Agreement and provided that Employee signs and returns this Agreement to Cheryl Kappenman, Director, CARE Business Partner, within twenty-one (21) days after the date Employee receives this Separation Agreement and General Release, Company will pay to Employee a special lump-sum separation payment in the gross amount of nine thousand dollars and zero cents ($9,000.00), which is equal to six (6) weeks base salary at Employee's then-current annualized rate, less required and authorized withholdings and deductions (the "Separation Payment"). Provided Employee signs and returns this Agreement and otherwise complies with the terms of the Agreement, the Separation Payment will be paid in lump sum as soon as reasonably practicable.

     3.    Vacation Pay. Company will pay Employee's earned and unused vacation time as of the Separation Date, less required or authorized deductions. Employee agrees that this is the total amount of vacation due as of the Separation Date. Employee agrees that no additional vacation will be earned after the Separation Date.

     4.    Release of Claims. Employee, and anyone claiming through Employee or on Employee's behalf, hereby releases and forever discharges Company and all of its affiliated companies, including, but not limited to: POET Plant Management, LLC and the biorefineries it manages; POET Biorefining, LLC and its subsidiaries; POET Design and Construction, Inc.; POET Research, Inc.; POET Research Center, Inc.; POET Nutrition, Inc.; POET Investments, Inc.; POET Biomass, LLC; PPL Parent Holding Company, LLC;

1



PPL Subsidiary Holding Company, LLC; POET Leasing, LLC; POET Risk Management Associates, Inc.; Ethanol Products, LLC; POET Grain LLC; POET Biorefining – Cloverdale, LLC; POET-DSM Project Liberty, LLC; and POET-DSM Advanced Biofuels, LLC and all of its affiliated companies; and all of their past, present and future owners, officers, directors, members, past and present employees, representatives, insurers, benefit plans, plan administrators, agents, divisions, parents, subsidiaries, successors and assigns (collectively the "Released Parties"), from any and all claims and causes of action of any type arising, or which may have arisen, out of or in connection with Employee's employment or termination of employment. The release of claims in this Paragraph includes, but is not limited to: any claims, demands or actions arising under the Age Discrimination in Employment Act of 1967, as amended from time-to-time; Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, as amended from time-to-time; the Family and Medical Leave Act, the Equal Pay Act, 42 U.S.C. §§ 1981, 1983, and 1985; the Sarbanes-Oxley Act of 2002; public policy claims; the South Dakota Human Relations Act; the South Dakota Equal Pay Act; the South Dakota Law on Genetic Information Bias in Employment; the South Dakota Constitution; retaliation; retaliatory discharge; invasion of privacy; personal injury of any kind; breach of contract; unjust enrichment; interference with contract; libel/slander/defamation; wrongful termination of employment; intentional or negligent infliction of emotional distress; negligent hiring, retention, supervision or any other negligence; vicarious liability; assault; battery; promissory estoppel; equitable estoppel; wage/salary/bonus/benefits/vacation; attorney's fees, costs, and/or disbursements; claims for alleged breach of fiduciary duty under Section 409 of the Employee Retirement Income Security Act alleging impairment in value of Employee's accounts, if any; any other claims under federal, state or local law for unlawful employment practice; any other statutory, tort, civil rights, contractual, and/or common law claims; and any other claims arising out of or related to the Released Parties as of the date of Employee's execution of this Agreement. Employee further understands that this discharge of claims extends to, but is not limited to, all claims which Employee may have against the Released Parties as of the date of Employee's execution of this Agreement. Employee acknowledges that this release includes all claims that Employee is legally permitted to release, and as such it does not apply to any vested rights under the Released Parties' retirement plans, nor does it preclude the Employee from filing a charge or claim that is non-waivable, including, but not limited to, charges of discrimination. Employee agrees, however, that Employee is waiving the right to any monetary recovery (including any obligation for any costs and attorney's fees) should any governmental agency or any other person pursue any such claims or charges on Employee's behalf.

5.     **No Other Actions or Claims.** Employee represents and warrants that: (i) Employee has not filed or initiated any legal or other proceedings against Company or any of the other Released Parties; (ii) no such proceedings have been initiated against any of the Released Parties on Employee's behalf; (iii) Employee is the sole owner of the claims that are released in Paragraph 4 above; (iv) none of these claims has been transferred or assigned or caused to be transferred or assigned to any other person, firm or other legal entity; (v) Employee has the full right and power to grant, execute and deliver the releases, undertakings and agreements contained in this Agreement; and (vi) Employee has not

2

received from Company or its attorneys any representation or warranty concerning any tax consequences of any monies or other benefits provided under this Agreement.

6.   Confidential Information Acquired During Employment.   Employee agrees to continue to treat as private and privileged any information (including trade secrets), data, figures, projections, estimates, sales and marketing plans, business strategies, strategic plans, customer information, customer and vendor lists, lists of contract workers, price lists, pricing methods, research and development, engineering information, manufacturing and production information, purchasing information, merchandising information, tax records, personnel records, accounting procedures and finances, formulas, contracts, business partners, alliances, ventures and all other confidential information which Employee acquired regarding Company and the other Released Parties or any of their customers or vendors while working for Company.  Further, Employee agrees not to release any such information to any person, firm, corporation or other entity at any time, except as may be required by law, or as agreed to in writing by Company.  Employee acknowledges that any violation of this non-disclosure provision shall entitle the Company to appropriate injunctive relief and to any damages which it may sustain due to the improper disclosure.

7.   Confidentiality; Non-Disparagement.   Employee agrees to keep the terms, facts and existence of this Agreement completely confidential, and also agrees not to disclose the terms of this Agreement or any information concerning this Agreement to anyone other than Employee's counsel, tax accountant or spouse, except as may be required by law or agreed to in writing by Company.  Employee agrees not to disparage or defame the goodwill or reputation of the Company or any of the Released Parties in any respect and not to make any derogatory comments or statements, whether written or oral, regarding the Released Parties or any of their owners, officers, directors or employees, to any other person or entity.  Employee acknowledges that this Confidentiality/Non-Disparagement covenant was a significant inducement for the Company to enter into this Agreement, and that any breach of this provision shall constitute a material breach of the Agreement and entitle the Company to the return of all monies paid to Employee pursuant to this Agreement, appropriate injunctive relief and to any other damages which it may sustain due to the violation, including, but not limited to, any attorney's fees incurred in connection with the violation or any legal action related thereto.  Nothing in this Agreement prohibits Employee from reporting to, communicating with, contacting, responding to an inquiry form or providing relevant information to or participating or assisting in an investigation conducted by the Securities and Exchange Commission or any other governmental or regulatory body or official or self-regulatory organization.  Employee does not need to notify the Company before making such reports, disclosures or communications.

8.   Separation from Employment and Continuing Benefits.  Employee's employment with the Company and all benefits associated therewith, except as provided herein or as provided in any employee benefit plan in which Employee is a participant (if any), ended on the Separation Date.  Employee acknowledges that Employee has been paid all amounts and benefits due and owing to Employee through the Separation Date.  Employee's health insurance coverage under the Company's group health plan shall continue through midnight on the last day of the month in which the Separation Date

3

occurs.  After that date, the Employee will only be eligible to elect benefits continuation to the extent permitted under: (a) the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA") in accordance with applicable COBRA provisions; or (b) any applicable state-specific benefits continuation laws.  Employee shall promptly inform Company in writing when Employee obtains or becomes eligible for any such other health care coverage.  Company will pay the cost of Employee's COBRA coverage through November 30, 2017, and then Employee shall be responsible for paying the full costs of such COBRA coverage for the remainder of the COBRA period.

9.    <u>Cooperation</u>.  Employee agrees that, at Company's request, Employee will cooperate with Company in any claims or lawsuits against Company where Employee has knowledge of the facts involved in the claim or lawsuit.  Employee further agrees not to voluntarily aid, assist or cooperate with anyone who has claims against Company or with their attorneys or agents in any claims or lawsuits which such person may bring against Company.  Nothing in this Agreement prevents Employee from testifying at an administrative hearing, arbitration, deposition or in court, in response to a lawful and properly served subpoena.  Employee acknowledges that this Cooperation covenant was a significant inducement for Company to enter into this Agreement and that a breach of this covenant will constitute a material breach of the Agreement and entitle Company to return of all monies paid to Employee pursuant to this Agreement, appropriate injunctive relief and to any other damages which it may sustain due to the violation, including, but not limited to, any attorney's fees incurred in connection with the violation or any legal action related thereto.

10.    <u>No Admission of Wrongdoing</u>.  Nothing in this Agreement is intended to or shall be construed as an admission by Company or any of the other Released Parties that any of them violated any law, interfered with any right, breached any obligation or otherwise engaged in any improper or illegal conduct with respect to Employee or otherwise.  Company and the other Released Parties expressly deny any such illegal or wrongful conduct.

11.    <u>Return of Company Property</u>.  Employee represents that as of the Execution Date of this Agreement, Employee has returned all information (electronic and hard copy) and other property of Company and the other Released Parties in Employee's possession or control, including, without limitation, any Company vehicle(s), all confidential and proprietary information (whether in hard copy or electronic form), security keys, passes, credit cards, phone cards, laptop computer, computer manuals, PDA, smart phones, customer and vendor lists (printed and electronic copies), keys, documents, business equipment, computer software, discs and media, policy and procedures manuals, and any other materials pertaining to any matter Employee worked on for Company.  If it is determined at any time that Employee has failed to return the property contemplated by this Paragraph, Company shall be free to withhold any unpaid portion of the Separation Payment owed to Employee under this Agreement and/or bring an action to recover said property and/or any money paid to Employee under this Agreement, along with the attorney's fees incurred in an effort to enforce its rights under this Paragraph.

4

12.   <u>Choice of Law</u>.  The terms of this Agreement shall be governed by the laws of the State of South Dakota, without regard to its choice of law rules, and shall be construed and enforced thereunder.

13.   <u>Merger</u>.  This Agreement sets forth all understandings and agreements between Employee and Company, and supersedes and replaces all prior oral and written agreements, understandings and representations between Employee and Company, except that Sections 4.0 through 9.0 of Employee's Employment Agreement and the Notice To Employee Regarding Intellectual Property appended thereto, and the obligations and representations contained therein, shall remain in full force and effect and survive termination of Employee's employment with the Company.

14.   <u>Consideration</u>.  Employee acknowledges and agrees that the foregoing payments and benefits each provide Employee with valuable consideration to which Employee would not otherwise be entitled if Employee had not signed this Agreement.

15.   <u>Waiver of Breach</u>.   Any party's failure to enforce this Agreement in the event of one or more events that violate this Agreement shall not constitute a waiver of any right to enforce this Agreement against subsequent or continuing violations of this Agreement.

16.   <u>Severability</u>.  Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement is held to be invalid, illegal or unenforceable, such invalidity, illegality or unenforceability shall not affect the other provisions of this Agreement, and this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.

17.   <u>Medicare Eligibility</u>.  Employee affirms, covenants and warrants Employee has made no claim for illness or injury against, nor is Employee aware of any facts supporting any claim against, the Released Parties under which the Released Parties could be liable for medical expenses incurred by Employee before or after the execution of this Agreement.  Furthermore, Employee is aware of no medical expenses which Medicare has paid and for which the Released Parties are or could be liable for now or in the future. Employee agrees and affirms that, to the best of Employee's knowledge, no liens of any governmental entities, including those for Medicare conditional payments, exist.  Employee will indemnify, defend and hold the Released Parties harmless for Medicare claims, liens, damages, conditional payments and rights to payment, if any, including attorney's fees, and Employee further agrees to waive any and all future private causes of action for damages pursuant to 42 U.S.C. § 1395y(b)(3)(A) *et seq*.

18.   <u>Not Assignable; Writing to Change</u>.  This Agreement is not assignable without the written consent of the Parties.  Any changes to this Agreement must be made in writing and must be signed by the Parties.

5

19.   <u>Counterparts</u>.  This Agreement may be executed in counterparts, each of which shall be an original and together shall constitute one Agreement.

20.   <u>ACKNOWLEDGMENTS</u>.  Other than as stated herein, Employee acknowledges, understands, and agrees that:

(a) Employee has read and fully understands the terms and effect of this Agreement;

(b) Employee releases and waives claims under this Agreement knowingly and voluntarily in exchange for consideration in addition to anything of value to which Employee already is entitled;

(c) Employee hereby is and has been advised of Employee's right to have Employee's attorney review this agreement before signing it;

(d) Employee has twenty-one (21) days after the date on which Employee receives this Agreement in which to consider whether to sign this Agreement; and

(e) Employee has seven (7) days to revoke this Agreement after signing it.

Accepted and Agreed to:

EMPLOYEE                                          POET, LLC

_____          _____
Barbara Nyreen                                    Cheryl Kappenman


_____          _____
                                                  *8.15.2017*
Date Executed                                     Date Executed

6